UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK BRADFORD,

       Petitioner,

v.                             CASE NO. 04-CV-70862-DT
                             HONORABLE DENISE PAGE HOOD

HUGH WOLFENBARGER,

       Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

      Mark Bradford ("Petitioner"), an inmate currently confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his assault with intent to murder conviction, Mich. Comp. L. § 750.83, which was imposed following a jury trial in the Oakland County Circuit Court in 1999. Petitioner was sentenced as a fourth habitual offender, Mich. Comp. L. § 769.12, to 30 to 60 years imprisonment on January 4, 2000.

      In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the scoring of the state sentencing guidelines, the proportionality of his sentence, the effectiveness of appellate and trial counsel, the trial court's refusal to substitute counsel, the trial court's refusal to consider an issue raised in his motion for relief from judgment, and the state courts' refusals to provide him with an evidentiary hearing on his ineffective assistance of counsel claims. For the reasons stated below, the Court denies the petition for writ of habeas corpus.

1

**I.    Facts**

Petitioner's conviction stems from his brutal stabbing assault upon his estranged wife, Melody Bradford ("Melody"), at their home in Royal Oak Township on March 25, 1999. The Michigan Court of Appeals set forth the relevant facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> On March 25, 1999, defendant went to the marital home where his estranged wife, the victim, and his children were living. Defendant was admitted to the home by his stepdaughter, Jennifer. Although the screen door of the home was never locked, it was locked after defendant entered the home. Defendant entered the bedroom and spoke with the victim. The victim took her cellular telephone to Jennifer in case something happened. One week prior to this visit by defendant, the victim had told neighbors that she feared that defendant would kill her. The couple spoke for an extensive period of time. Defendant told the victim that he thought about killing her, but it was not "worth it." At approximately 9:30 p.m, defendant telephoned his employer to advise that he would be late for work. Defendant indicated that he wanted to reconcile, but the victim was concerned about prior drug and physical abuse by defendant. At approximately midnight, the victim advised defendant that she needed to sleep. Defendant told the victim that she did not need to sleep and began to choke her. Defendant tried to get the victim to enter the basement, but she refused. The couple struggled, and the victim screamed for help. Jennifer tried to call 911, but found that the two telephones in the home had been disabled. Jennifer was unable to contact 911 with the cellular telephone. Jennifer observed defendant strike the victim in the face.

> The victim tried to exit the home, but found that the screen door was locked. The victim was able to unlock the door and jump off the porch. Defendant chased after the victim with a knife. The victim was stabbed in the back. The victim struggled to get the knife from defendant. She was stabbed in the neck on two occasions. The victim managed to get the knife from defendant on two occasions and toss it aside. Each time, defendant retrieved the knife and attacked the victim. Neighbors observed the stabbing on the front lawn, called 911, and screamed at defendant to leave the victim alone. Neighbor James Waters, jumped off his porch and said, "What in the hell are you doing, Bradford?" Defendant looked and began walking down the street.

> The Waters family assisted the victim into their home. There was so much blood that it was difficult to discern where the stabbings wounds were located. The victim told the family to apply pressure to her neck. In addition to the neck and back wounds,

>the victim suffered numerous cuts to her hands. The victim was taken to the hospital where she was treated by Dr. Kenneth Gibb. Dr. Gibb testified that the neck injuries were life threatening because of the major blood vessels in the neck. However, the back injury was not life threatening because the stabbing had not pierced the victim's lungs. Near the scene, police observed defendant walking. When defendant saw the police, he fled and hid in a field, where he was arrested.
>
>In his opening statement, defense counsel argued that the prosecutor could not establish the element of intent to kill because of defendant's alcohol and drug induced condition. At trial, the victim testified that defendant was "high." When asked to provide a factual support for that conclusion, the victim stated that she "knew" defendant, he had never acted so violently before, and his eyes were red. However, the victim also testified that defendant did not slur his words, did not ramble, and did not stagger. Jennifer testified that she did not smell alcohol on defendant when he arrived at the home. There was no evidence admitted at trial that defendant consumed any alcohol or drugs between the time of his arrival at the home and at the time of the attack. A police officer responsible for defendant's intake, who was trained in signs of alcohol and drug intoxication, did not perceive the conditions that evidence such consumption. Evidence at trial also revealed that defendant normally parked in the driveway or on the street, but during this visit, parked across the street in a plaza parking lot. The prosecution argued that this evidence coupled, with the screen door being locked and the disconnection of the telephones, evidenced the requisite intent and negated the intoxication defense.

*People v. Bradford*, No. 224790, 2001 WL 1480716, *1-2 (Mich. App. Nov. 20, 2001).

At the close of testimony, the jury found Petitioner guilty of assault with intent to murder. The trial court subsequently sentenced him as a fourth habitual offender to 30 to 60 years imprisonment.

## II.     Procedural History

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising claims concerning the sufficiency of the evidence, the scoring of the sentencing guidelines, and the proportionality of his sentence. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in a *per curiam* decision. *People v. Bradford*, No. 224790, 2001 WL 1480716 (Mich. App. Nov. 20, 2001) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Bradford*, 466

Mich. 886, 646 N.W.2d 471 (2002).

Petitioner subsequently filed a motion for relief from judgment in the trial court raising claims concerning the effectiveness of appellate and trial counsel and the trial court's refusal to appoint substitute counsel.  On December 19, 2002, the trial court issued an order striking the substitution of counsel issue for exceeding the page limit under Michigan Court Rule 2.119(A)(2) as to that issue and denied relief on the other two issues for failure to establish entitlement to relief under Michigan Court Rule 6.508(D)(3).  Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising the ineffective assistance of appellate and trial counsel claims.  The Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *People v. Bradford*, No. 246080 (Mich. App. April 21, 2003) (unpublished).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied.  *People v. Bradford*, 469 Mich. 948, 671 N.W.2d 47 (2003).

Petitioner thereafter filed the present habeas petition asserting the following claims:

I. The evidence was insufficient to convict him of assault with intent to murder where the element of specific intent was lacking under all the circumstances.

II. He must be resentenced where offense variables 3, 7, and 10 were not properly scored where defense counsel objected and the prosecutor sought to change the scoring of these variables by the probation department but did not establish that the scoring was wrong by a preponderance of the evidence.

III. He should be resentenced where his sentence of 30 to 60 years is disproportionate to the offender and the offense under the circumstances of this case.

IV. He was denied the effective assistance of appellate counsel where counsel failed to raise the meritorious issue of ineffective assistance of trial counsel.

V. He was denied the effective assistance of trial counsel where counsel failed to identify potential defense witnesses and call them to testify, failed to present evidence to support his diminished capacity defense, refused his help with the case, failed to communicate with him for months, was openly hostile

4

       to him in court, and failed to appear at two hearings.

- VI. The trial court's denial of his request for substitute counsel was an abuse of discretion where the court was aware of counsel's unprofessional conduct and failed to hold a hearing to determine if there was a conflict of interest which deprived him of his rights to the effective assistance of counsel and a fair trial.

- VII. He was denied his right to due process when the trial court abused its discretion by refusing to consider a meritorious issue raised in his motion for relief from judgment that was outside the 20-page limitation.

- VIII. His right to due process was violated where he was denied an evidentiary hearing to develop the record in support of his ineffective assistance of trial and appellate counsel claims.

Respondent has filed an answer to the petition contending that the claims should be denied based upon procedural default and/or for lack of merit.

### III.   Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

5

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

6

A federal court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.     Analysis**

    A.     Insufficient Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecutor presented insufficient evidence to establish that he acted with the requisite intent to support a conviction for assault with intent to murder. Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, a conviction for assault with intent to murder requires proof beyond a reasonable doubt that the defendant committed: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Hoffman*, 225 Mich. App 103, 111, 570 N.W.2d 146 (1997); *see also* Mich. Comp. L. § 750.83. Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *People*

7

*v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

Applying the *Jackson* standard, the Michigan Court of Appeals concluded that the prosecution presented sufficient evidence to support Petitioner's conviction. The court stated in relevant part:

> We conclude that there was sufficient evidence to support the element of intent to kill. While the victim, defendant's wife, testified that he was "high," her conclusion was based upon the redness of defendant's eyes and her prior relationship with him. There was no evidence of any drug or alcohol consumption between defendant' arrival at the home and the attack hours later. Other witnesses to defendant's state or condition on the date of the incident contradicted the victim's testimony that defendant was high. There was ample evidence for the jury to reject the intoxication defense. *Nowack, supra.* [FN 1]
>
> > FN 1. Defendant's related argument, that he was "provoked" by the victim and did not intend murder as opposed to the intent required for manslaughter, is completely without foundation in the record. The victim testified that the couple discussed their relationship for a lengthy period. However, the comment that preceded the attack was the victim's request to go to sleep.

*Bradford*, 2001 WL 1480716 at *2.

Having reviewed the record, this Court agrees and finds that the Michigan Court of Appeals' decision is neither contrary to nor an unreasonable application of *Jackson* or of the facts. The verdict was supported by the evidence that Petitioner choked, chased, and stabbed the victim after they had been talking at their home for more than an hour, as well as the evidence indicating that Petitioner locked the screen door to the home and disabled the telephones prior to the assault. While the victim testified that she thought Petitioner was "high" when he came to the home, there was no evidence that he used alcohol or drugs during the lengthy time they visited before the attack. There was also no testimony to support the defense that Petitioner was provoked. Given the trial testimony, a rational factfinder could reasonably conclude that Petitioner committed the assault and

8

that he acted with the intent to kill. A rational factfinder could reasonably reject Petitioner's claim that he was provoked and/or that he was too high or intoxicated to form the requisite intent.

Petitioner's insufficient evidence claim challenges the credibility and weight to be accorded the evidence presented at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence presented at trial, this Court finds that the Michigan Court of Appeals' determination that a rational trier of fact could have found the elements of assault with intent to commit murder beyond a reasonable doubt was reasonable. Habeas relief is not warranted on Petitioner's insufficient evidence claim.

B.  <u>Sentencing Guidelines Claim</u>

Petitioner next asserts that he is entitled to habeas relief because certain variables of the state sentencing guidelines were incorrectly scored. Respondent contends that this claim is a state law issue which does not warrant habeas relief. The Michigan Court of Appeals concluded that the guidelines were properly scored as a matter of state law. *See Bradford*, 2001 WL 1480716 at *3.

Petitioner has no basis for relief on his sentencing guidelines claim. Even if the state court did miscalculate the guidelines, Petitioner is not entitled to relief from this Court. "Because state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and its rules of practice." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citation omitted). Claims concerning the improper scoring of sentencing guidelines are generally not

9

cognizable in habeas proceedings. *See Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

Moreover, even if this claim is cognizable upon habeas review, Petitioner has not shown that the Michigan Court of Appeals' decision that Offense Variables 3, 7, or 10 were properly scored is contrary to Supreme Court precedent or an unreasonable application of the law or the facts. The testimony at trial supported a finding that the victim's injuries were life-threatening, that the victim was subject to excessive brutality, and that Petitioner engaged in predatory conduct. Petitioner has not shown that the state court erred in scoring the Offense Variables 3, 7, or 10. He is thus not entitled to relief on this claim.

Petitioner relatedly asserts that his sentence was based upon inaccurate information relative to the scoring guideline variables. A sentence may violate due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (criminal defendant must have a meaningful opportunity to rebut contested information at sentencing). To prevail on such a claim, the petitioner must also show that the trial judge relied on the allegedly false information. *See United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992). Petitioner has made no such showing. The record reveals that the trial court relied upon facts established at trial in imposing sentence and other permissible factors. Further, Petitioner had an opportunity to, and did, contest the scoring of the guidelines at sentencing. Petitioner has not shown that the trial court relied upon inaccurate information in imposing his sentence. Habeas relief is not warranted on this claim.

C.   <u>Sentencing Proportionality Claim</u>

10

Petitioner next alleges that he is entitled to habeas relief because his sentence of 30 to 60 years imprisonment is disproportionate. Respondent contends that this claim constitutes a state law issue which lacks merit.

To the extent that Petitioner asserts that his sentence is disproportionate under state law, he fails to state a claim for federal habeas relief. *See Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). It is well-established that habeas relief does not lie for perceived errors of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).

Petitioner is also not entitled to relief on any claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *Thomas*, 49 F.3d at 261.

Petitioner was sentenced as a fourth habitual offender to 30 to 60 years imprisonment. The sentence was within the guideline range and the statutory maximum. *See* Mich. Comp. L §§ 750.83, 769.12. Accordingly, this Court concludes that the trial court acted within its discretion

11

in imposing Petitioner's sentence and there is no extreme disparity between Petitioner's crime and sentence so as to offend the Eighth Amendment. The Michigan Court of Appeals' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Habeas relief is not warranted on this claim.

      D.      <u>Ineffective Assistance of Trial Counsel Claim</u>

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to identify potential defense witnesses and call them to testify, failing to present evidence to support a diminished capacity defense, refusing his help with the case, failing to communicate with him for months, for being openly hostile to him in court, and for failing to appear at two hearings. Respondent contends that this claim is barred by procedural default.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last

reviewing court relied upon the last reasoned opinion. *Id*.

Here, the Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's applications for leave to appeal the denial of his motion for relief from judgment based upon his failure to comply with Michigan Court Rule 6.508(D). That rule provides, in relevant part, that a court may not grant post-conviction relief to a defendant grounds that could have been raised on direct appeal but were not, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. Mich. Ct. R. 6.508(D)(3). The state courts' decisions, while brief, were based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Further, the record reveals that the trial court denied relief on the ineffective assistance of trial counsel claims because Petitioner failed to establish cause and prejudice for not raising them on direct appeal of his conviction. *Cf. Abela v. Martin*, 380 F.3d 915, 922-23 (6th Cir. 2004) (Michigan Supreme Court's reference to MCR 6.508(D) may not be clear procedural default when a lower court denies relief on the merits).

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his default in failing to raise the issue of ineffective assistance of trial counsel on direct appeal of his conviction. Petitioner, however, cannot establish that appellate counsel was ineffective so as to establish cause nor can he establish prejudice as his ineffective assistance of trial counsel claim lacks merit.

13

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

Petitioner has failed to establish that he was denied the effective assistance of trial counsel. The record reveals that counsel was well-prepared for trial, effectively cross-examined witnesses, and made relevant and timely objections. Petitioner has not shown that trial counsel acted outside

14

the range of reasonable conduct. Petitioner has not established that defense counsel failed to take reasonable steps to prepare for trial, interview witnesses, investigate potential defenses, or challenge the prosecution's case. Petitioner fails to allege with specificity what motions, witnesses, defenses, or exculpatory evidence counsel should have investigated or produced at trial which could have affected the outcome at trial. While Petitioner asserts that certain individuals could have testified as to his long history of drug and alcohol abuse, he has presented no statements of such witnesses or other evidence to support his assertion that he was so under the influence of drugs or alcohol at the time of the incident that he was unable to form the requisite intent to commit the crime. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). The record indicates that counsel took reasonable steps to investigate the potential defenses of diminished capacity/insanity and intoxication and that counsel attempted to refute the prosecution's case by cross-examining witnesses, challenging the evidence, and presenting Petitioner's defense of lack of intent such that counsel's performance was not deficient under *Strickland, supra*. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Moreover, given the evidence presented at trial, particularly the testimony of the victim and her daughter, and the fact that Petitioner offers no new additional evidence in support of his defense, Petitioner cannot establish that he was prejudiced by trial counsel's conduct. He has thus

15

failed to satisfy either prong of the *Strickland* test for ineffective assistance of counsel.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

E. <u>Ineffective Assistance of Appellate Counsel Claim</u>

Petitioner relatedly asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim on direct appeal. Respondent contends that this claim lacks merit. This Court agrees. Petitioner cannot establish that appellate counsel was deficient or that he was prejudiced by counsel's performance as his underlying ineffective assistance of trial counsel claim lacks merit. *See* discussion *supra*. Petitioner is thus not entitled to habeas relief on this claim.

F. <u>Substitute Counsel Claim</u>

Petitioner also alleges that he is entitled to habeas relief because the trial court erred in refusing to appoint substitute counsel at trial. Respondent contends that this claim is barred by procedural default.

As noted, habeas relief may be precluded on a claim that a petitioner has failed to present

to the state courts in accordance with the state's procedural rules, absent a showing of cause and prejudice or a fundamental miscarriage of justice.  *See* discussion *supra*.  The state trial court rendered the last reasoned opinion on this issue.  In rejecting Petitioner's claim, the trial court relied upon a state procedural bar -- the fact that Petitioner's brief exceeded the 20-page limitation set forth in the Michigan Court Rule 2.119(A)(2).  The trial court refused to review this claim based upon an independent and adequate state procedural rule.  *See People v. Collier*, No. 253151, 2005 WL 1106501, *2 (Mich. App. May 10, 2005) (unpublished); *People v. Courtemanche*, No. 221484, 2002 WL 31955230, *2 (Mich. App. Dec. 17, 2002) (unpublished).

Additionally, the record indicates that Petitioner failed to raise this issue before the Michigan Court of Appeals in his post-conviction proceedings.  Since Petitioner may not file another motion for relief from judgment concerning this issue, *see* Mich. Ct. R. 6.502, he no longer has an available state remedy to pursue this claim.  Accordingly, this claim, while unexhausted, is procedurally defaulted for this additional reason.  *See Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994).

Petitioner neither alleges nor establishes cause to excuse his procedural default as to this claim.  A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).  Nonetheless, the Court notes that Petitioner has not established prejudice as his underlying claim lacks merit.

It is well-established that "[t]he right to counsel of choice, unlike the right to counsel . . . is not absolute.  An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).  Good cause includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [an] attorney." *Wilson v. Mintzes*,

17

761 F.2d 275, 280 (6th Cir. 1985).

When reviewing whether a court abused its discretion in denying a defendant's motion to substitute counsel, a court generally considers, "the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense. . . . Further, consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Iles*, 906 F.2d at 1131, n.8 (internal quotations omitted).

In this case, the trial court did not abuse its discretion nor violate Petitioner's constitutional rights in denying his request for substitute counsel. Petitioner first expressed dissatisfaction with defense counsel on the day of trial. His complaints about counsel's performance and advice were not credited nor viewed as substantial by the trial court and do not establish good cause for substitution. While Petitioner expressed some concern about counsel's communications with him, defense counsel stated that he had consulted with Petitioner and that he was ready to defend him. Petitioner has not shown that a legitimate breakdown in the attorney-client relationship occurred.

Further, as discussed *supra*, Petitioner has not established that a fundamental miscarriage of justice has occurred. This claim is therefore barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

### G.    Motion for Relief from Judgment Claim

Petitioner next contends that he is entitled to habeas relief because the trial court refused to consider the substitution of counsel issue raised in his motion for relief from judgment because his brief exceeded the 20-page limitation on that issue. Respondent contends that this is a state law issue which does not warrant habeas relief. This Court agrees. Perceived violations of state law

and procedure which do not infringe upon specific federal constitutional protections are not cognizable upon federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Whether the state court erred in applying the Michigan Court Rules in denying Petitioner's motion for relief from judgment is a question of state law that cannot be reviewed in a federal habeas proceeding. *See, e.g, May v. Renico,* No. 00-CV-10420-BC, 2002 WL 31748845, * 5 (E.D. Mich. Nov. 12, 2002). State courts are the final arbiters of state law questions. *See Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Habeas relief is therefore not warranted on this claim.

### H.   Evidentiary Hearing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the state courts refused to grant him an evidentiary hearing to establish his ineffective assistance to trial and appellate counsel claims. Respondent contends that this is a state law issue which lacks merit. This Court agrees. The state court's decision that Petitioner was not entitled to an evidentiary hearing under Michigan law is not subject to federal habeas review. *See Estelle*, 502 U.S. at 67-68; *see also United States ex. rel. Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1095-96 (N.D. Ill. 1999) (rejecting claim involving state trial court's failure to conduct a post-conviction evidentiary hearing). Further, given the Court's determination that the foregoing claims are without merit, Petitioner has not established that an evidentiary hearing is warranted in this case.

## V.   Conclusion

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

                                      s/ DENISE PAGE HOOD
                                      DENISE PAGE HOOD
                                      UNITED STATES DISTRICT JUDGE

DATED:  February 28, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2006, by electronic and/or ordinary mail.

                                      s/William F. Lewis
                                      Case Manager